**GREYHOUND LINES, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Trailways Tamiami, Inc., Intervenor.**

**No. 80–2082.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1981.

Decided Oct. 9, 1981.

Dudley D. Allen, Jacksonville, Fla., with whom John H. Wilbur, Jacksonville, Fla., was on the brief, for petitioner.

Colleen J. Bombardier, Atty., I.C.C., Washington, D.C., with whom Sanford M. Litvack, Asst. Atty. Gen., Dept. of Justice, Richard A. Allen, Gen. Counsel, and Robert S. Burk, Deputy Gen. Counsel, I.C.C., and Robert B. Nicholson and Nancy C. Garrison, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Henri F. Rush, Atty., I.C.C., Washington, D.C., entered an appearance for respondent I.C.C.

**46.** *Id.* at 335, 640 F.2d at 421 (emphasis supplied) (footnotes omitted).

Robert J. Corber, Washington, D. C., with whom Robert Lewis Thompson, Washington, D. C., and R. J. Reynolds, III, Atlanta, Ga., were on the brief, for intervenor.

Before WRIGHT, MacKINNON, and MIKVA, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Trailways Tamiami, Inc. (Trailways) applied to the Interstate Commerce Commission (ICC) for a certificate of public convenience and necessity to transport passengers and their baggage, and express and newspapers, over regular routes from Atlanta to Orlando and points in between. Trailways' application was referred to a Joint Board, which took extensive testimony. On November 19, 1979 the Joint Board issued its decision granting Trailways' application in its entirety. Greyhound Lines, Inc. (Greyhound) filed exceptions to this initial decision, but on July 2, 1980 the ICC entered a summary order affirming the Joint Board's decision and adopting the findings and conclusions of the Board. Greyhound then filed a petition for review pursuant to 28 U.S.C. § 2342 (1976), alleging several errors in the Commission's action.

■ We conclude that, on the record as a whole, the ICC's finding of public convenience and necessity is supported by substantial evidence and is not arbitrary, capricious, or an abuse of discretion. For the most part, the well-reasoned opinion of the Joint Board needs little elaboration. However, Greyhound challenges the ICC's use of a rather novel evidentiary procedure involving testimony by adoption. Since this court has not addressed the appropriateness of such a procedure, we wish to make clear that use of adoption testimony is commendable in circumstances like those presented in this case.

## I. ADOPTION TESTIMONY

■ Early in the proceedings the Joint Board determined that the testimony of many supporting public witnesses was quite similar and to some extent cumulative. It therefore directed the parties to develop and use an adoption procedure whereby public witnesses whose testimony would be substantially the same as that of prior witnesses who had testified individually could adopt in substance the testimony of the prior witnesses.[1] Supplemental Appendix (S.App.) at 8–9. The Board required that these witnesses adopt the entire testimony of specific prior witnesses from the same or nearly the same locations. The adopted testimony thus incorporated all qualifications and admissions elicited from both direct and cross-examination.

Under the circumstances, the Board's use of adoption testimony was entirely appropriate. Trailways presented 423 public witnesses in support of its application; Greyhound presented 390 public witnesses in opposition. Faced with the prospect of over 800 witnesses, the Board naturally sought procedures to expedite the taking of testimony. While 344 of Trailways' witnesses and 142 of Greyhound's witnesses eventually testified by adoption, the Board still heard the full individual testimony of 327 witnesses. Even with the adoption procedure, the testimony of Trailways' witnesses alone took six days to complete, and the entire hearing lasted 19 days. The Board estimated that without the procedure the entire hearing could easily have lasted three times as long as it did. S.App. at 9.

Formal evidentiary requirements cannot be woodenly applied to the administrative setting. The ICC's own rules allow for flexibility in the admission of evidence in order to achieve efficiency,[2] see 49 C.F.R. § 1100.73 (1980), and the courts have long recognized that evidentiary rules used in

1. Adoption was permitted even though testimony might possibly differ in some details.

2. Use of the adoption procedure was well within the bounds of prior ICC practice; adoption

and similar techniques appear to be established Commission tools. *See, e.g., Brush Hill Transport Co.*, 112 M.C.C. 348, 354 (1970).

judicial proceedings do not control the more flexible administrative process, *see, e.g., ICC v. Baird*, 194 U.S. 25, 44, 24 S.Ct. 563, 569, 48 L.Ed. 860 (1904) (ICC's function is "largely one of investigation and it should not be hampered * * * by those narrow rules which prevail in trials"). Where the adoption procedure is not used as a substitute for oral testimony but as a supplement to it, we think the practice has merit.

## II. CONCLUSION

In all other respects the ICC's decision is also free of reversible error. Accordingly, that decision is

*Affirmed.*